April 20, 2021

Dear Clerk,

Please find enclosed an original and 2 copies of pro-se Petitioner Carlos Gomez's motion under 28 U.S.C. § 2255 and a Certificate of Service. The U.S. Attorney has been served and a courtesy copy has been sent to the Honorable Sidney H. Stein. Please file accordingly.

Thank you.

Carlos Gomez
Carlos Gomez
#41178-054 pro-se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2021 APR 26   AM 10: 29

---------------------------------------------------------X

CARLOS GOMEZ,

        Petitioner,

              v.

UNITED STATES OF AMERICA,

        Respondent.

---------------------------------------------------------X

03-CV-1076

S14 97 Cr. 696 (SHS)

Pro-se


# MOTION TO VACATE CONVICTION
# AND SENTENCE PURSUANT TO TITLE
# 28 U.S.C. § 2255


Carlos Gomez
#41128-054 pro-se
USP Tucson
P.O. Box 24550
Tucson, Arizona 85734


Audrey Strauss
United States Attorney
United States Attorney's Office
Southern District of New York
1 Saint Andrew's Plaza
New York, N.Y. 10007

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES..........................................................................................................ii

PRELIMINARY STATEMENT......................................................................................................1

INTRODUCTION.........................................................................................................................2

STATEMENT OF FACTS AND BACKGROUND..........................................................................2

    A. Gomez's Convictions and Sentence.......................................................................2

    B. The Government's Theory of the Case and Evidence............................................4

SUMMARY OF ARGUMENT.......................................................................................................5

ARGUMENT................................................................................................................................6

I. Applicable Law........................................................................................................................6

    A. The Standard of Relief, and Applicability of, 28 U.S.C. § 2255...........................6

    B. The Davis Decision and its Effect on § 924(c).......................................................7

    C. Davis is Retroactively Applicable on Collateral Review.........................................7

    D. The Categorical Approach to Crimes of Violence..................................................8

II. Gomez's § 924(c) Conviction Should be Vacated Because the Only Purported
    Crime of Violence that Can Support the Conviction is Not a Crime of Violence
    Following Davis.....................................................................................................................9

    A. Conspiracy Offenses are No Longer Crimes of Violence......................................9

    B. It Cannot be Definitively Determined Which Predicate Act Underlies the
       § 924(c) Conviction, Yet the Record Only Supports the Conspiracy
       With any Certainty............................................................................................................9

    C. The Verdict Must be Set Aside Because It May Rest Upon a Legally Invalid
       Predicate Act..................................................................................................................13

    D. The Court Can Only Assume that the Conviction Rested on the Least of the
       Predicate Acts, i.e., the Conspiracy..............................................................................15

III. Gomez's § 924(c) Conviction Should be Vacated Because the Remaining
Predicate Offense also Does Not Categorically Qualify as a Crime of Violence........................16

    A. Crimes that Can be Committed Recklessly and by Omission Categorically
do Not Meet the Force Clause Definition of a Crime of Violence.................................16

IV.  Counsel Should be Appointed..............................................................................18

CONCLUSION.............................................................................................19

## **TABLE OF AUTHORITIES**

### **Cases**

Apprendi v. New Jersey, 530 U.S. 466 (2000)...........................................................3

Chambers v. United States, 555 U.S. 122, 127-28 (2009).............................................17

Chowdhury v. Worldtel Bangl. Holding Ltd., 746 F.3d 42, 50 (2d Cir. 2014) (quoting
United N.Y. & N.J. Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 619 (1959)).....................14

Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003)...................................................17

Descamps v. United States, 570 U.S. 254, 261 (2013) (quoting Taylor v. United States,
495 U.S. 575 (1990))...........................................................................8

Gomez v. United States, 2d Cir. USCA No. 19-4145, April 5, 2021 Order...........................2,7-8,18

Greene v. United States, 260 F.3d 78, 83 (2d Cir. 2001)..................................................1

Haines v. Kerner, 404 U.S. 519 (1972)..................................................................1

In re Gomez, 830 F.3d 1225, 1227 (11th Cir. 2016)....................................................15

Johnson v. United States, 135 S.Ct. 2551 (2015).......................................................7

Johnson v. United States, 559 U.S. 133, 137 (2010) (citing Shepard v. United States,
544 U.S. 13 (2005))..........................................................................5,15

People v. Steinberg, 79 N.Y.2d 673, 680 (1992).......................................................17

Pinkerton v. United States, 328 U.S. 640 (1946)...................................................3,11-12,14

Shepard v. United States, 544 U.S. 13, 16 (2005).....................................................8-9

Shriro v. Summerlin, 542 U.S. 348, 351 (2004)..................................................................7

Spataro v. United States, No. 16-2103, Document 23 (2d Cir. November 12, 2019)......................9

United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006)...............................................8,16

United States v. Agrawal, 762 F.3d 235, 250 (2d Cir. 2013)...........................................13-14

United States v. Barrett, 937 F.3d 126, 127-28 (2d Cir. 2019)..........................................8,9

United States v. Begay, 934 F.3d 1033, 1038-39 (9th Cir. 2019).........................................16

United States v. Botti, 711 F.3d 299, 310 (2d Cir. 2013)..................................................14

United States v. Bowen, 936 F.3d 1091, 1097-98 (10th Cir. 2019)........................................7

United States v. Brown, __F.App'x__, 2019 WL 6971648, at *1 (2d Cir. December 19, 2019)
    (summary order)........................................................................................9

United States v. Brown, No. 17 Cr. 420 (KMW), ECF Docket Entry 96
    (S.D.N.Y. July 25, 2018)..............................................................................17

United States v. Castleman, 134 S.Ct 1405 (2014)..........................................................18

United States v. Davis, 139 S.Ct. 2319 (2019)...................................................1,2,6,7,8,9,16,18

United States v. Garcia, 992 F.2d 409, 415-16 (2d Cir. 1993)..............................................14

United States v. Gordils, 117 F.3d 99, 103 (2d Cir. 1997)..................................................6

United States v. Johnson, 2019 U.S. Dist LEXIS 160088, at *75, *79
    (S.D.N.Y. September 16, 2019).........................................................................9

United States v. Jones, 935 F.3d 226, 271-74 (5th Cir. 2019).............................................15

United States v. Kroll, 918 F.3d 47, 54-55 (2d Cir. 2019).................................................8

United States v. Masotto, 73 F.3d 1233, 1239 (2d Cir. 1996)...............................................3

United States v. Mayo, 901 F.3d 218, 230 (3d Cir. 2018)...............................................17,18

United States v. Middleton, 883 F.3d 485, 489 (4th Cir. 2018)...........................................16

United States v. Moreno, 821 F.3d 223, 228 (2d Cir. 2016)...............................................16

United States v. Rodriguez, 94 Cr. 313, 2020 WL 1878112 (S.D.N.Y. April 15, 2020)................9,15

United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999).............................................10

United States v. Rosa, 507 F.3d 142, 154-56 (2d Cir. 2007)............................................................8-9

United States v. Rose, 896 F.3d 104, 109 (1st Cir. 2018)...............................................................16

United states v. Scott, USCA No. 18-163-cr, (2d Cir., en banc, March 2, 2021)............................18

United states v. Vederoff,, 914 F.3d 1238, 1248 (9th Cir. 2019)......................................................16

Welch v. United States, 136 S.Ct. 1257, 1268 (2016)......................................................................7

Yates v. United States, 354 U.S. 298, 312 (1957).....................................................................5,13-14

### Statutes

18 U.S.C. § 16.............................................................................................................................7

18 U.S.C. § 16(a).........................................................................................................................16

18 U.S.C. § 924(c)..................................................................................................................passim

18 U.S.C. § 924(c)(3)(A)..................................................................................................6-7,17-18

18 U.S.C. § 924(c)(3)(B)...............................................................................................................6

18 U.S.C. § 924(e) (the Armed Career Criminal Act ("ACCA")).................................................7,16,18

18 U.S.C. § 1959(a)(1).............................................................................................................2,3

18 U.S.C. § 1959(a)(5).............................................................................................................2,3

18 U.S.C. § 1962(c)..................................................................................................................2,4

18 U.S.C. § 1962(d)....................................................................................................................2

21 U.S.C. § 841(b)(1)(C)..............................................................................................................3

21 U.S.C. § 846...........................................................................................................................2

28 U.S.C. § 2244(b).....................................................................................................................6

28 U.S.C. § 2244(b)(2)(A)...........................................................................................................7

28 U.S.C. § 2255................................................................................................................1,2,6,7,8

28 U.S.C. § 2255(a).....................................................................................................................6

28 U.S.C. § 2255(b)...................................................................................................................6

28 U.S.C. § 2255(h)................................................................................................................6,7

N.Y. Penal Law § 15.10.............................................................................................................17

N.Y. Penal Law § 125.20...........................................................................................................18

N.Y. Penal Law § 125.25.....................................................................................................16,17,18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CARLOS GOMEZ,
               Petitioner,                                              03-CV-1076

        v.                                                      S14 97 Cr. 696 (SHS)

UNITED STATES OF AMERICA,
               Respondent.

                                                  Pro-se
------------------------------------------------------X

## MOTION TO VACATE CONVICTION
## AND SENTENCE PURSUANT TO TITLE
## 28 U.S.C. § 2255

### PRELIMINARY STATEMENT

      Petitioner Carlos Gomez ("Gomez"), pro-se, respectfully submits this Motion to Vacate

Conviction and Sentence Pursuant to Title 28 U.S.C. § 2255. Specifically, Gomez seeks to vacate his

conviction and sentence for violation of 18 U.S.C. § 924(c) in light of the Supreme Court decision in

United States v. Davis, 139 S.Ct. 2319 (2019).

      Gomez, pro-se, is not an attorney and has enlisted the aid of others in preparing this submission.

As such, Gomez asks this Court to apply less stringent standards to his arguments of law and find them

to imply the strongest arguments possible. Haines v. Kerner, 404 U.S. 519 (1972); Greene v. United

States, 260 F.3d 78, 83 (2d Cir. 2001) (holding that the general rule requiring liberal construction of pro-

se pleadings applies to § 2255 motions).

**INTRODUCTION**

On June 24, 2019, the Supreme Court in <u>United States v. Davis</u>, 139 S.Ct. 2319 (2019), held that the residual clause definition of a crime of violence in 18 U.S.C. § 924(c) is unconstitutionally vague. The <u>Davis</u> decision is a new substantive rule that applies retroactively to cases on collateral review. The new rule announced in <u>Davis</u> definitively renders Gomez's conviction under § 924(c) invalid. Because Gomez's conviction was final and he had previously sought § 2255 relief on different claims, he sought, and was granted, leave to file a second or successive § 2255 motion by the Second Circuit. See, <u>Gomez v. United States</u>, 2d Cir. USCA No. 19-4145, April 5, 2021 Order, attached as Exhibit A. Gomez now submits this § 2255 motion seeking vacatur of the conviction under § 924(c) and for resentencing under the remaining counts.

**STATEMENT OF FACTS AND BACKGROUND[1] [2]**

A. **Gomez's Convictions and Sentence**

On September 2, 1999, Gomez was convicted after trial by jury of four out of fifteen charged counts in indictment No. S14 97 Cr. 696. See, S.D.N.Y. 97-cr-696, doc. 200 (S-14 indictment) (hereinafter, the "Indictment"); doc. 266 (judgment). Specifically, Gomez was convicted of: Count One, Racketeering in violation of 18 U.S.C. § 1962(c); Count Two, Racketeering conspiracy in violation of 18 U.S.C. § 1962(d); Count Ten, the use and carry of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); and Count Fifteen, conspiracy to violate the narcotics laws in violation of 21 U.S.C. § 846. Id. Gomez was acquitted of the remaining eleven counts which included three conspiracy offenses under 18 U.S.C. § 1959(a)(5) (Counts 3, 5 and 6), four substantive offenses under 18

_____

[1] Only the facts and background relevant to this motion are included in this motion.

[2] Gomez is not in possession of his legal materials and is making this submission with the assistance of other parties and with the limited documents obtained by those parties.

U.S.C. §§ 1959(a)(1) and 2 (Counts 4 and 8) and §§ 1959(a)(5) and 2 (Counts 7 and 9), and four § 924(c) offenses (Counts 11-14). On July 17, 2000, Gomez was sentenced to concurrent terms of life imprisonment on Counts One, Two and Fifteen,[3] and an additional mandatory consecutive five years' imprisonment was imposed on Count Ten, the § 924(c) count. See, Judgment, doc. 266.

The indictment presented to the jury in Count Ten charged a violation of § 924(c) for the "use and carry" of a firearm, or aiding and abetting such use, during and in relation to a crime of violence. See, Indictment, at Count 10. This count was predicated upon two alternative underlying crimes of violence: the conspiracy to murder and murder of Jose Gonzalez Santiago, aka "Puma," "as charged in Racketeering Act One in Count One, and in Counts Three and Four" of the indictment. See Id.

For the § 924(c) counts, the court instructed the jury that it must find that Gomez used or carried a firearm, or aided and abetted the use and carry, during a crime of violence. See Tr.[4] 3998-4004. The court also instructed that the underlying crimes of violence contained in each § 924(c), to include those in Count Ten, were crimes of violence, and that it must find that Gomez committed or aided and abetted the underlying crime as charged. Id. For the underlying substantive charges (Counts 1, 4, 7, 8 and 9) the same theories of liability were given, with an additional instruction that the jury could convict on those counts under the Pinkerton liability theory[5] if it found Gomez guilty of the underlying conspiracies, "even though he did not personally participate in the acts constituting the crime or did not

---

[3] The life sentence on Count 15, the narcotics conspiracy offense, was driven by the life sentences on Counts One and two. The life sentences on Counts One and Two were in turn driven by the finding of a single racketeering Act in Count One. It should be noted that, based upon Apprendi v. New Jersey, 530 U.S. 466 (2000), which was decided while Gomez's direct appeal was pending and thus applicable, the sentence on Count 15 should have been limited to a maximum of 20 years under 21 U.S.C. § 841(b)(1)(C) because the jury was instructed that it need not find a quantity amount. See, Trial Transcript page 3946.

[4] "Tr." stands for the trial transcript page.

[5] See Pinkerton v. United States, 328 U.S. 640 (1946). "Under the Pinkerton theory of liability, a conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent that those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement even if he did not himself participate in the substantive crimes." United States v. Masotto, 73 F.3d 1233, 1239 (2d Cir. 1996) (citation and internal quotation marks omitted).

have actual knowledge of it." See Tr. 4004-05. The jury returned a general verdict of "Guilty" for Count

Ten, the § 924(c) count, without specifying which underlying crime of violence it found to underlie the

conviction. See Tr. 4140, attached as Exhibit B. Of relevance, the jury acquitted Gomez of the conspiracy

to murder and murder of Jose Gonzalez Santiago charged in Counts Three and Four, respectively, yet

found those offenses as Racketeering Act One in Count One.[6] See Tr. 4137.

### B.  The Government's Theory of the Case and Evidence

The government's theory of the case was that Gomez was the leader of the Westchester Avenue

Crew ("WAC"), a RICO organization whose members committed many violent crimes in aid of the

organization's drug dealing operations, and that Gomez committed many of those offenses to maintain

his position as the leader of the enterprise. In regard to the underlying predicates for the § 924(c) in

Count Ten, i.e., the conspiracy to murder and murder of Jose Gonzalez Santiago, aka "Puma,"  the

government's theory was that Gomez ordered Santiago's murder because he believed Santiago was the

individual who had murdered one of Gomez's relatives, Leonard Irizarry. Because Irizarry was murdered

while coming out of Gomez's van and accompanying Gomez's wife, Gomez interpreted Irizarry's murder

as a case of mistaken identity and an attempt on Gomez's life. In response, Gomez ordered his brother,

Julio Gomez, and Dion Scatlife to kill Santiago. Gomez provided a .38 caliber firearm to Scatlife and then

paid Scatlife several thousand dollars after Scatlife reported to Julio Gomez and Gomez that he

murdered Santiago. The testimony of cooperating witnesses provided the only direct evidence

implicating Gomez of his involvement in this conspiracy and murder.[7]

---

[6]  The conviction under Count One, for RICO under 18 U.S.C. § 1962(c), required at least two racketeering acts. Gomez's conviction under Count One, as established by the jury's verdict, was predicated upon only two acts: the conspiracy to murder and murder of Santiago (either of which constitutes Act One), and the narcotics conspiracy named in Count 15 (as Racketeering Act Four). See, Tr. 4137-38.

[7]  It must be noted that the government produced not one iota of evidence that links the conspiracy to murder and murder of Santiago, i.e., racketeering Act One of Count One, to the enterprise's affairs. Thus, the government's evidence and theory on this offense was insufficient to support the jury's finding of that Act in furtherance of the

## SUMMARY OF ARGUMENT

Gomez was convicted of the § 924(c) offense under the theory that he "used and carried" a firearm, or aided and abetted such use and carry, during and in relation to a "crime of violence." Two offenses, a conspiracy to murder and a murder, were named as alternative crime of violence acts underlying the § 924(c) offense. The jury rendered its verdict without specifying which act(s) it found to support the conviction.  In light of Davis, the conspiracy does not qualify as a crime of violence able to underlie a § 924(c) conviction. As discussed below, because it cannot be determined from the record which of the acts was the basis of the jury's verdict, and indeed, due to the Pinkerton instruction it is likely that the inclusion of the conspiracy charge as an underlying predicate was the basis of the conviction, the conviction cannot stand in light of the reasonable probability that it rested upon an invalid act. See, Yates v. United States, 354 U.S. 298, 312 (1957) (where one of two objects of a charge is "insufficient in law, … the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected"). In fact, the Court can only at most assume that the conviction rested upon the lesser of the charged predicate acts, i.e., the invalid conspiracy. See, Johnson v. United States, 559 U.S. 133, 137 (2010) (where the court cannot determine upon which of the alternative elements a defendant's conviction necessarily rests, the court cannot "conclude that [the conviction] rested upon anything more than the least of these acts" (citing Shepard v. United States, 544 U.S. 13 (2005)).

---

enterprise's affairs, and in turn insufficient to support the convictions on Count One and Two (because there remains only one other Act). While it could arguably be claimed that Gomez committed the Act to maintain and/or increase his position in the enterprise, that theory was expressly rejected by the jury with its acquittals on the same offenses in substantive Counts 3 and 4 which required that theory to be found. In short, it is submitted that Gomez should NOT be serving the life sentence that is based upon this conviction. As a direct result of serious medical issues that befell Gomez's counsel's spouse, no post-verdict motions were submitted on Gomez's behalf and thus he was never afforded an opportunity to resolve this claim in a proper Fed.R.Crim.P.  Rule 29 or 33 motion. No post-verdict motions were submitted on Gomez's behalf.

Moreover, following <u>Davis</u>, the other charged predicate offense here, the murder in violation of New York Penal law, also cannot categorically qualify as a crime of violence because it can be committed recklessly or by omission and, as a categorical matter, reckless offenses should not qualify as crimes of violence under the force clause of § 924(c). Therefore, the Court should vacate Gomez's § 924(c) conviction and order that Gomez be resentenced on the remaining counts.

## ARGUMENT

### I.   **Applicable Law**

#### A.   **The Standard of Relief, and Applicability of, 28 U.S.C. § 2255**

A federal prisoner may challenge his conviction and sentence under 28 U.S.C. § 2255 if it was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Where a judgment is found "vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). As such, § 2255 "gives a district court broad and flexible remedial authority" to vacate and set a judgment aside and "to resentence a defendant and correct the sentence as appropriate." <u>United States v. Gordils</u>, 117 F.3d 99, 103 (2d Cir. 1997). Notwithstanding the above, a gatekeeping provision must be met before review of a second or successive petition is allowed. After a defendant's first petition has been adjudicated on the merits and is final, as is the case here, a second and/or successive § 2255 petition can only be accepted by a district court for review with the express authorization by the appellate court, and only if it is based upon "newly discovered evidence ..." or on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §s 2244(b), 2255(h).

**B.  The Davis Decision and its Effect on § 924(c)**

The Supreme Court in United States v. Davis, 139 S.Ct. 2319 (2019), struck down the residual clause definition of a crime of violence in § 924(c)(3)(B) as unconstitutionally vague, leaving its "force" or "elements" clause under § 924(c)(3)(A) intact. Davis, 139 S.Ct. at 2324. As such, to qualify as a § 924(c) predicate crime of violence an offense must satisfy this force clause, i.e., an offense must have "an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

**C.  Davis is Retroactively Applicable on Collateral Review**

Davis, in striking down the residual clause of § 924(c) as unconstitutionally vague, has narrowed the scope of the statute. Such new rules apply retroactively. Shriro v. Summerlin, 542 U.S. 348, 351 (2004) ("decisions that narrow the scope of a criminal statute" apply retroactively). The Tenth Circuit has agreed with this assessment and vacated a § 924(c) conviction on collateral review based on Davis. United States v. Bowen, 936 F.3d 1091, 1097-98 (10th Cir. 2019) ("Davis ... is a new constitutional rule that is retroactive on collateral review"). Indeed, the Supreme Court has already held that its ruling in Johnson v. United States, 135 S.Ct. 2551 (2015), where it struck down the fundamentally similar residual clause definition of a crime of violence in § 924(e) (the Armed Career Criminal Act ("ACCA")), is a new "substantive rule that has retroactive effect in cases on collateral review." Welch v. United States, 136 S.Ct. 1257, 1268 (2016). The Davis decision emphasized the similarity, stating that the residual clause of § 924(c) "bears more than a passing resemblance" to the residual clauses that were already struck down in the ACCA and 18 U.S.C. § 16. Davis, 139 S.Ct. at 2321-22 (2019). As such, Davis is likewise retroactively applicable on collateral review and, because it was decided long after Gomez's first § 2255 petition became final, it was previously unavailable. In fact, the Second Circuit has authorized this very second/successive § 2255 petition under a Davis claim in accordance with the gatekeeping provision that it be based upon a new Supreme Court rule of constitutional law "made retroactive to cases on

collateral review …, that was previously unavailable." 28 U.S.C. §s 2244(b)(2)(A), 2255(h). See, Gomez v. United States, No. 19-4145, April 5, 2021 Order, attached as Exhibit A.

### D. The Categorical Approach to Crimes of Violence

To determine whether an offense is a crime of violence for purposes of § 924(c), courts must use the categorical approach. See, e.g., Davis, 139 S.Ct. at 2327; United States v. Barrett, 937 F.3d 126, 128 (2d Cir. 2019) (vacating § 924(c) conviction predicated on Hobbs Act conspiracy because the decision whether an offense is a crime of violence "must be made categorically" and conspiracy offenses do not categorically qualify). Under the categorical approach, courts may "'look only to the statutory definitions'--i.e., the elements" of an offense and "*not* 'to the particular facts underlying those convictions.'" Descamps v. United States, 570 U.S. 254, 261 (2013) (quoting Taylor v. United States, 495 U.S. 575 (1990)). "The key … is elements, not facts." Descamps, 570 U.S. at 261. Moreover, the Second circuit has also previously held that in analyzing whether a predicate offense was a crime of violence for the purposes of § 924(c), it "focus[es] on the intrinsic nature of the offense rather than the circumstances of the particular crime. Consequently, only the minimum criminal conduct necessary for the conviction under a particular statute is relevant." United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006).

In addition, where an offense is divisible, courts may use a "modified categorical approach" as a mechanism to be able to "determine which crime formed the basis of the defendant's conviction." Descamps, 133 S.Ct. at 2283-84.  To determine the elements of a particular offense, a court consults the law itself and, to the extent that a law is divisible, a limited number of case-specific documents. See, e.g., Shepard v. United States, 544 U.S. 13, 16 (2005); United States v. Kroll, 918 F.3d 47, 54-55 (2d Cir. 2019). These so-called Shepard documents include the defendant's indictment, plea agreement, plea colloquy, or jury instructions; they do not include other documents such as police reports, a bill of

particulars, or presentence reports. See, e.g., <u>Shepard</u>, 544 U.S. at 16; <u>United States v. Rosa</u>, 507 F.3d

142, 154-56 (2d Cir. 2007). The documents are consulted only to determine the elements of the offense

of which the defendant was convicted, not the facts of the case.

### II. **Gomez's § 924(c) Conviction Should be Vacated Because the Only Purported Crime of Violence that Can Support the Conviction is Not a Crime of Violence Following Davis**

#### A. **Conspiracy Offenses are No Longer Crimes of Violence**

Pursuant to <u>Davis</u> the Second Circuit has held, and the government has conceded, that

conspiracies categorically do not meet the force clause definition of a crime of violence and therefore

cannot underlie and support a conviction for a § 924(c) offense. See, e.g., <u>United States v. Barrett</u>, 937

F.3d 126, 127-28 (2d Cir. 2019) (noting that "the prosecution and defense agree," and holding, that

"<u>Davis</u> precludes us from concluding ... that [the defendant's] Hobbs Act robbery conspiracy crime

qualifies as a § 924(c) crime of violence."); <u>United States v. Brown</u>, ___F.App'x___, 2019 WL 6971648, at *1

(2d Cir. December 19, 2019) (summary order) (vacating § 924(c) conviction predicated on RICO

conspiracy); <u>United States v. Rodriguez</u>, 94 Cr. 313, 2020 WL 1878112, at *7 (S.D.N.Y. April 15, 2020)

(relying on Government's concession that conspiracy to murder is no longer a valid § 924(c) predicate);

<u>United States v. Johnson</u>, 2019 U.S. Dist LEXIS 160088, at *75, *79 (S.D.N.Y. September 16, 2019) (noting

that "[t]he government concedes that, in light of <u>Davis</u>, racketeering conspiracy can no longer constitute

a crime of violence" and vacating § 924(c) count); see also, Government's Opposition to application for

leave to submit second/successive § 2255, at 7, <u>Spataro v. United States</u>, No. 16-2103, Document 23 (2d

Cir. November 12, 2019) (the government concedes that "following <u>Davis</u>, Spataro's § 924(c) cannot be

predicated on the murder conspiracy charged"). As such, the conspiracy offense underlying Gomez's § · · ·

924(c) count cannot support the conviction.

#### B. **It Cannot be Definitively Determined Which Predicate Act Underlies the § 924(c) Conviction, Yet the Record Only Supports the Conspiracy With any Certainty**

The indictment presented to the jury in Count 10 charged a violation of § 924(c) for the "use and carry" of a firearm, or aiding and abetting such use, during and in relation to a crime of violence. Indictment, at Count 10. This count was predicated upon the conspiracy to murder and murder of Santiago. Id. The jury was instructed that all of the underlying predicates, including the conspiracy, were crimes of violence. Tr. 4002-03. Because the jury rendered a general verdict of guilty on the § 924(c) count, Tr. 4140, Exhibit B, it is impossible to determine which act(s) the jury found to support the conviction. Notwithstanding this fact, the record surrounding the verdict in this case points to the conspiracies as the only possible acts providing any certainty.

As established by the record, Gomez was separately *acquitted* of the conspiracy and substantive counts (Counts Three and Four) which encompass the acts charged to underlie the § 924(c) offense.[8] Nonetheless, those acquitted offenses were found by the jury as Racketeering Act One of Count One, and thus the only possible support for the § 924(c) conviction comes from these acts found in the substantive RICO conviction. Although the jury's verdict found both portions of Act One of Count One (i.e., the conspiracy and the murder of Santiago) "[p]roved," see Tr. 4137, it provides no certainty to the jury's selection of the substantive act in light of the jury instructions given. The jury was specifically instructed that,

> racketeering act 1 includes both conspiracy to murder and murder. ... If you find that Mr. Gomez committed *any one* of the crimes charged within a single racketeering act you must find that racketeering act proved. *You need only find that he committed one of the crimes charged within a single racketeering act **in order to find the entire racketeering act proved.***

Tr. 3970 (emphasis in italics and bold added). Thus, a jury finding on any of the subset of crimes *required*

---

[8] It is submitted that the acquittal of the underlying charges alone warrants vacatur of the § 924(c) conviction. See, e.g., United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999) (The commission of a predicate crime of violence is an element of a § 924(c) offense).

the jury to find the *entire* racketeering act proved. In this light, the jury could have simply found the conspiracy, and thus found the entire racketeering act proved.

Moreover, coupled with this instruction, and highly relevant to an analysis of the jury's findings, is the fact that the jury was also given a "Pinkerton liability" instruction that allowed the jury to find Gomez guilty of the substantive RICO count, and indeed, its underlying substantive Act, "even if [it] did not find that the government ha[d] satisfied its burden of proof with respect to each element of the substantive crime." Tr. 4004-05. Under the Pinkerton theory, the jury had to *necessarily* find Gomez guilty of the conspiracies to then find him liable for the substantive counts. The court instructed the jury that:

> *If, in light of my instructions, you find, beyond a reasonable doubt, that a defendant was a member of the conspiracy charged in the indictment, ... and thus, guilty on the conspiracy count*, then you may also, but you are not required to, find him guilty of the corresponding substantive crime charged ... provided you find each of the following five elements beyond a reasonable doubt:
>
> First, that the crime charged in the substantive count was committed;
>
> Second, that the person or persons you find actually committed the crime were members of the conspiracy you found existed;
>
> Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;
>
> Fourth, that the defendant was a member of that conspiracy at the time the substantive crime was committed; and
>
> Fifth, that the defendant could have reasonably foreseen that the substantive crime be committed by his co-conspirators.
>
> If you find all of these elements to exist beyond a reasonable doubt, then you may find the defendant you are considering guilty of the substantive crime charged against him, *even though he did not personally participate in the acts constituting the crime or did not have actual knowledge of it.*

Tr. 4004-05 (emphasis in italics added).

Furthermore, on the conspiracy offenses, the court twice instructed the jury that a "conspiracy to commit a crime is an entirely separate and distinct charge from the actual violation or substantive charge which is the object of the conspiracy," Tr. 3944, 3956, and further instructed that,

> A defendant need not have joined the conspiracy at the outset. A defendant may have joined it for any purpose at any time in its progress and that defendant will still be held responsible for all that was done *before* he joined and all that was done during the conspiracy's existence while the defendant was a member.

Tr. 3952-53 (emphasis added).

Adding to this, on the RICO conspiracy count (Count 2) the court instructed that,

> Mr. Gomez need not conspire or agree to participate in the conduct of the affairs of th[e] enterprise. If you find beyond a reasonable doubt that any member of the conspiracy agreed to commit at least two acts of racketeering activity and that Mr. Gomez knew about and agreed to facilitate or participate in the conduct of the affairs of the enterprise, that is sufficient to support a conviction under Count 2.
>
> ... It is enough if the government proves beyond a reasonable doubt that Mr. Gomez was aware of the general nature of the conspiracy and that the conspiracy extended beyond his individual role, and that he agreed to commit the substantive RICO offense by agreeing to facilitate or participate in the affairs of the enterprise.

Tr. 3958-59.

These instructions, combined with the jury instructions explaining that "a conspiracy once formed is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members ... [and] once a person is found to be a member of a conspiracy that person is presumed to continue being a member until the venture is terminated," Tr.3954, establishes that the jury may well have found Gomez guilty of the RICO conspiracy and only convicted on the substantive RICO Count One and found its substantive Act (here, the murder of Santiago) by way of Pinkerton liability even though it believed that Gomez did not participate in or aid and abet the murder and didn't even know about it, or even if it believed that he joined the conspiracy *after* the commission of the substantive act. The jury only needed to find that Gomez agreed to facilitate or participate in the

affairs of the enterprise. Indeed, the fact that the jury acquitted Gomez of that specific conspiracy and substantive offense points to the probability and likelihood that the substantive Racketeering Act was found through co-conspirator liability for the RICO conspiracy, with the finding of others committing the Act. Undoubtedly, the inconsistency in the verdict and the fact that Gomez was acquitted of numerous other charged offenses indicates the weakness of the government's case and evidence in regard to Gomez's participation in *any* substantive offenses. And it should be noted that the Government in summation argued every possible liability theory for the substantive counts, including Pinkerton liability.

Under this probable Pinkerton liability scenario, the jury would have necessarily convicted Gomez for the RICO conspiracy and found the conspiracy to murder Santiago Act (committed by any member), and then found Gomez liable for the substantive RICO and its substantive murder Act. Under such scenario, the jury would *not* have found that Gomez personally used or carried a firearm, or aided and abetted another to do so, during and in relation to the same crime of violence act for the § 924(c) offense.[9] Thus, the conspiracy is the *only* offense that can definitively said to have been found by the jury, beyond a reasonable doubt, to have been committed by Gomez, and that conspiracy act is now legally insufficient to support a § 924(c) conviction.

**C.   The Verdict Must be Set Aside Because It May Rest Upon a Legally Invalid Predicate Act**

The Supreme Court has long ago established that where one of two objects of a charge is "insufficient in law, ... the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." Yates v. United States, 354 U.S. 298, 312 (1957); see also, United States

---

[9] It must be emphasized that the jury instruction for liability of the § 924(c) offenses was for the actual commission of the offense, or aiding and abetting the offense. See Tr. 3998-4004.

13

v. Agrawal, 762 F.3d 235, 250 (2d Cir. 2013) (noting that general verdict may manifest legal error under

Yates v. United States where (1) "disjunctive theories of culpability" were submitted to the jury, (2) it is

"impossible to tell which ground the jury selected," and (3) "[o]ne of the theories was legally

insufficient"); United States v. Garcia, 992 F.2d 409, 415-16 (2d Cir. 1993) (applying Yates and reversing

where the "conviction may have been based upon one of [] two [legally insufficient] theories"). The

Second Circuit has held that to prevail on such a claim the inclusion of the legally invalid predicate must

have affected the defendant's substantial rights and is subject to harmless error review. See, Chowdhury

v. Worldtel Bangl. Holding Ltd., 746 F.3d 42, 50 (2d Cir. 2014) ("The Supreme Court decades ago

announced the so-called general verdict rule, that 'a new trial will be required' where 'there is no way to

know that [an] invalid claim ... was not the sole basis for [a] verdict." (citing and quoting United N.Y. &

N.J. Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 619 (1959))), and United States v. Botti, 711 F.3d

299, 310 (2d Cir. 2013) (denying claim because the defendant "failed to establish that the plain error in

the charge affected his substantial rights.").

   As established above, the charged conspiracies are "insufficient in law" as predicate offenses under

§ 924(c), and it is "impossible to tell" which predicate offense(s) was (or were) selected by the jury.

Notwithstanding this fact, the conspiracies nonetheless happen to be the only predicate acts providing

any substance of certainty of selection. The trial record does not show that Gomez's conviction was

based upon the other predicate, or that the clear legal error of including the invalid predicate was

otherwise harmless. Indeed, the conspiracy charges infected every aspect of Gomez's trial as it is

impossible to extricate the conspiracy charges from the other charged predicate. As argued above,

because the court charged the jury on a Pinkerton theory of liability, there is a reasonable probability

that Gomez's substantive RICO conviction and its underlying Acts rested on the jury's conspiracy finding,

and any act found by the way of Pinkerton liability is insufficient to support a conviction under § 924(c).

Under the facts of this case, the jury may very well have found that Gomez used and carried a firearm in

relation to the conspiracies, here the RICO conspiracy and conspiracy to murder act, but not for the substantive offenses. In short, there is no way to know that the invalid conspiracy predicate was not the sole basis of the § 924(c) conviction. Under these circumstances, the Court should vacate the § 924(c) conviction. See, United States v. Jones, 935 F.3d 226, 271-74 (5th Cir. 2019) (vacating § 924(c) conviction following trial, because jury was instructed regarding both a valid and invalid predicate and the conviction may have been based on the invalid predicate); In re Gomez, 830 F.3d 1225, 1227 (11th Cir. 2016) (recognizing that general verdict did not reveal whether defendant's conviction was based on a valid or invalid predicate and granting permission for successive habeas motion to challenge the conviction); United States v. Rodriguez, No. 94 Cr. 313 (CSH), 2020 WL 1878112, (S.D.N.Y. April 15, 2020) (vacating § 924(c) convictions where jury was instructed on four alternative predicates, including invalid conspiracy predicate, and the record and inclusion of the Pinkerton theory left the court with "no way to know that an invalid basis was not the sole basis for [the] jury verdicts").

### D.  The Court Can Only Assume that the Conviction Rested on the Least of the Predicate Acts, i.e., the Conspiracy

Moreover, when a conviction can rest upon one or more acts which constitute an element of the offense, and a court cannot definitively determine upon which alternative element(s) a defendant's conviction necessarily rests, the court cannot conclude that the conviction "rested upon anything more than the least of these acts." Johnson v. United States, 559 U.S. 133, 137 (2010) (citing Shepard v. United States, 544 U.S. 13 (2005)).

As established above, it is impossible to determine with certainty upon which predicate act(s) the conviction rests, and the Court can therefore only conclude that the conviction rests upon the least of those acts, i.e., the conspiracy which cannot support a conviction under § 924(c).  The conviction should be set aside.

III. **Gomez's § 924(c) Conviction Should be Vacated Because the Remaining Predicate Offense also Does Not Categorically Qualify as a Crime of Violence**

A. **Crimes that Can be Committed Recklessly and by Omission Categorically do Not Meet the Force Clause Definition of a Crime of Violence**

In determining whether a predicate offense under § 924(c) is a crime of violence, <u>Davis</u> directs that the categorical approach must be used. <u>Davis</u>, 139 S.Ct. at 2327. This approach looks to the elements of the offense and, as the Second Circuit has held, "only the minimum criminal conduct necessary for the conviction under a particular statute is relevant." <u>United States v. Acosta</u>, 470 F.3d at 135. In light of this, following <u>Davis</u>'s invalidation of the residual clause, the other predicate offense underlying Gomez's charged § 924(c) offense also no longer categorically qualifies as a "crime of violence" because the minimum conduct necessary for conviction of that offense does not meet the force clause requirements of § 924(c).

For example, several circuits have held that offenses which can be committed recklessly— including murder—are no longer valid predicate "crimes of violence" because, *as a categorical matter,* reckless offenses should not qualify as crimes of violence under the force clause. See, e.g., <u>United States v. Moreno</u>, 821 F.3d 223, 228 (2d Cir. 2016) (holding that assault offense is not a crime of violence under 18 U.S.C. § 16(a)'s force clause because it can be committed recklessly); <u>United States v. Begay</u>, 934 F.3d 1033, 1038-39 (9th Cir. 2019) (ruling state murder offense was not categorically a crime of violence for purposes of § 924(c) because it could be committed recklessly); <u>United States v. Rose</u>, 896 F.3d 104, 109 (1st Cir. 2018) (explaining that offense with *mens rea* of recklessness does not qualify as a violent felony under ACCA's force clause); <u>United states v. Vederoff</u>, 914 F.3d 1238, 1248 (9th Cir. 2019) (finding that murder does not constitute a crime of violence under the Sentencing Guidelines career offender force clause, because it can be committed recklessly); <u>United States v. Middleton</u>, 883 F.3d 485, 489 (4th Cir. 2018) (holding that reckless manslaughter does not qualify as a crime of violence under ACCA's force

clause). The predicate act (other than the conspiracy act) underlying Gomez's § 924(c) count arises from a substantive murder act that is based on New York State prohibitions. See, Indictment, Count 4 (see also, jury instructions in this regard and of the need to meet the New York State offense definitions, Tr. 3975-76). By their plain statutory terms, several New York murder and assault offenses, including N.Y. Penal Law § 125.25, can be committed recklessly—and therefore they categorically should not qualify as crimes of violence under § 924(c)'s force clause.

New York State criminal offenses, including murder, may also be committed by omission. See, e.g., People v. Steinberg, 79 N.Y.2d 673, 680 (1992) ("The Penal Law provides that criminal liability may be based on an omission ... [t]hus, a parent's failure to fulfill [a legal] duty can form the basis of a homicide charge."); see also N.Y. Penal Law § 15.10 (criminal liability in New York is based on a voluntary act or the omission to perform a voluntary act which he is physically capable of performing). An offense that can be committed by omission is categorically not a crime of violence under the force clause because it does not require the intended, threatened, or actual use of physical force. See, e.g., Chambers v. United States, 555 U.S. 122, 127-28 (2009) (stating that failure to report to a penal institution, which "[c]onceptually speaking, amounts to a form of inaction," "does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another'"); United States v. Mayo, 901 F.3d 218, 230 (3d Cir. 2018) (holding that Pennsylvania aggravated assault statute that "criminalizes certain acts of omission" does not satisfy ACCA's force clause). In Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), the Second Circuit held that a Connecticut intentional assault offense did not require the use of force because it could be committed by deliberate omission. Chrzanoski establishes that doing nothing, even if injury results, does not constitute the use of force. See, also, United States v. Brown, No. 17 Cr. 420 (KMW), ECF Docket Entry 96 (S.D.N.Y. July 25, 2018) (ruling that New York assault is not a "crime of violence" for purposes of Sentencing Guidelines provision). In short, New York State murder offenses cannot be categorical "crimes of violence" because

17

the conduct proscribed by the underlying statute is broader than the conduct encompassed by the statutory definition of a "crime of violence" in § 924(c)(3)(A).[10]

For these reasons, and based on the record of this case, it appears that Gomez's § 924(c) conviction is not supported by any legally valid predicate "crime of violence." The conspiracy act is unquestionably an invalid predicate, and it is impossible to conclude that the inclusion of that invalid predicate was harmless and did not affect Gomez's substantial rights. Further, the other potential predicate act likely no longer qualifies following the invalidation of § 924(c)'s residual clause, because it does not categorically have an element requiring the attempted, threatened, or actual use of force against the person or property of another. Thus, following Davis, Gomez's § 924(c) conviction should be vacated.

## IV. Counsel Should be Appointed

Gomez, proceeding pro-se, is not an attorney and has enlisted the aid of other non-attorneys in preparing and submitting this motion. Moreover, Gomez does not have any of his legal materials and had to rely on others to review the record. Considering these facts, counsel should be appointed so that this motion can be supplemented (if necessary) by learned counsel, and for representation in any future proceedings. Indeed, the Second Circuit denied Gomez's application for appointment of counsel "without prejudice to the issue being considered by the district court." See, Gomez v. United States, 2d Cir. USCA No. 19-4145, April 5, 2021 Order, attached as Exhibit A. Counsel should be appointed.

---

[10] Recently, in United States v. Scott, USCA No. 18-163-cr, (2d Cir., en banc, March 2, 2021), the Second Circuit en banc held that New York State first-degree manslaughter in violation of N.Y. Penal Law § 125.20 (and by extension, second-degree murder under N.Y. Penal Law § 125.25) is a crime of violence under the force clause of ACCA, even if it can be committed by inaction or omission. Id. This holding was based upon the Supreme Court's ruling in United States v. Castleman, 134 S.Ct 1405 (2014), where the Supreme Court stated that "the intentional causation of bodily injury necessarily involves the use of physical force." Id., at 1414. Gomez submits that Castleman is inapplicable because it is cabined by its context, which did not specifically consider the force clause or crimes that can be committed by omission. See, e.g., United States v. Mayo, 901 F.3d 215, 228, 229 n. 15 (3rd Cir. 2018) (declining to extend Castleman to ACCA context).

## **CONCLUSION**

Gomez has demonstrated that he is entitled to relief under <u>Davis</u>. Therefore, Gomez respectfully requests that the Court grant this petition, vacate Gomez's conviction under § 924(c), and set the matter for resentencing; and for any other relief this Court deems just and proper.

Dated:  Tucson, Arizona
         April 20, 2021

Respectfully submitted,


Carlos Gomez
#41128-054 pro-se
USP Tucson
P.O. Box 24550
Tucson, Arizona 85734

19

# Exhibit

# A

S.D.N.Y. – N.Y.C.
97-cr-696
11-cv-6738
Stein, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

———————————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-one.

Present:

> John M. Walker, Jr.,
> Dennis Jacobs,
> Joseph F. Bianco,
> *Circuit Judges.*

———————————————————————————

Carlos Gomez,

> *Petitioner,*

v.                                                                                    19-4145

United States of America,

> *Respondent.*

———————————————————————————

Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion, primarily based on *United States v. Davis*, 139 S. Ct. 2319 (2019). Petitioner argues, inter alia, that his 18 U.S.C. § 924(c) conviction is no longer supported by a valid predicate after *Davis*. Upon due consideration, it is hereby ORDERED that the stay previously entered by this Court is lifted, Petitioner's motion for leave to file a successive § 2255 motion is GRANTED, and this proceeding is TRANSFERRED to the district court. *See* 28 U.S.C. § 1631. Petitioner has made a prima facie showing that the proposed § 2255 motion satisfies the requirements of § 2255(h). *Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) (per curiam) (discussing prima facie standard).

The trial transcript is not before this Court. The indictment, jury instructions, and judgment reflect that Petitioner's § 924(c) conviction (count 10) was predicated on the murder and conspiracy to commit murder charged in racketeering act 1 in count 1. Although the indictment charged that those predicates violated New York Penal Law without specifying the relevant statutes, we assume for present purposes that the statutes governing the conspiracy-to-murder predicate were New York Penal Law §§ 105.15 and 125.25.* S.D.N.Y. 97-cr-696, doc. 200 (S-14 indictment), doc. 226 (jury instructions), doc. 266 (judgment).

———————————————

* Although Petitioner's indictment also predicated the § 924(c) charge on counts 3 and 4, Petitioner was acquitted on those counts.

This Court has granted *Davis*-based successive motions challenging § 924(c) convictions predicated, in whole or part, on conspiracy to commit murder under 18 U.S.C. § 1959(a)(5) and/or New York Penal Law §§ 105.15 and 125.25.   *See, e.g., Mayes v. United States*, 2d Cir. 20-1574, doc. 35 (3/23/2021 order); *Ocasio v. United States*, 2d Cir. 19-487, doc. 63 (11/4/2020 order); *Padilla v. United States*, 2d Cir. 16-1871, doc. 73 (1/28/2020 Order).   In *Padilla*, the Government conceded that conspiracy to commit murder under § 1959(a)(5) can only qualify as a crime of violence under the § 924(c)(3)(B) "risk-of-force" clause, because a conspiracy can be committed without the use, attempted use, or threatened use of physical force.   *Padilla*, 2d Cir. 16-1871, doc. 67 (Gov't Letter) at 2; *accord United States v. Rodriguez*, 94-cr-313, 2020 WL 1878112, at *7 (S.D.N.Y. Apr. 15, 2020) (relying on Government concession that conspiracy to murder under § 1959(a)(5) and New York Penal Law §§ 105.15 and 125.25 is no longer a valid § 924(c) predicate).   The district court, in the first instance, should determine the predicates supporting the § 924(c) conviction and whether those predicates remain valid.

We acknowledge that Petitioner's § 924(c) conviction might still be supported by a valid predicate, even if the other predicate is no longer valid after *Davis*.   However, making that determination in the present case may require detailed review of the criminal proceedings and factfinding that the district court is better suited to perform, particularly since portions of the record are not currently before this Court.   More importantly, that type of detailed review and factfinding is generally inappropriate in a gatekeeping proceeding where the Court only needs to determine whether a prima facie showing has been made and the Court is statutorily required to reach a decision quickly (or as quickly as circumstances permit).   *See In re Cannon*, 931 F.3d 1236, 1243 (11th Cir. 2019).

As a consequence of our order, the district court will have the preliminary task of determining whether the claim in Petitioner's § 2255 motion – as to which we have only concluded that a prima facie showing has been made – satisfies the threshold requirements governing successive § 2255 motions, including those set forth in 28 U.S.C. §§ 2244(a), 2244(b)(3)-(4), and 2255(h).   *See Massey v. United States*, 895 F.3d 248, 251 (2d Cir. 2018).

For present purposes, we have not examined any other claims, or adopted any specific arguments, raised by Petitioner.   *See United States v. MacDonald*, 641 F.3d 596, 615 (4th Cir. 2011) (stating that, if the court of appeals determines that a proposed successive § 2255 motion contains any claim that satisfies § 2255(h), the court should grant leave to file the entire § 2255 motion in district court, even if some of the proposed claims do not satisfy the § 2255(h) standards).

It is further ORDERED that Petitioner's motion for appointment of counsel is DENIED, without prejudice to the issue being reconsidered by the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

2

# Exhibit

# B

1            THE COURT DEPUTY:  As to Count 8, Murder of Juan

2     Guerra Perez in aid of racketeering, how do you find the

3     defendant Carlos Gomez, guilty or not guilty?

4            THE FOREPERSON:  Not guilty.

5            THE COURT DEPUTY:  As to Count 9, Attempted murder of

6     Edward Perez in aid of racketeering, how do you find the

7     defendant Carlos Gomez, guilty or not guilty?

8            THE FOREPERSON:  Not guilty.

9            THE COURT DEPUTY:  As to Count 10, Using or carrying

10    a firearm in relation to the conspiracy to murder and murder

11    of Jose Gonzalez Santiago a/k/a "Puma," how do you find the

12    defendant Carlos Gomez, guilty or not guilty?

13           THE FOREPERSON:  Guilty.

14           THE COURT DEPUTY:  As to Count 11, Using or carrying

15    a firearm in relation to the conspiracy to murder Orlando

16    Nieves a/k/a "Londi," how do you find the defendant Carlos

17    Gomez, guilty or not guilty?

18           THE FOREPERSON:  Not guilty.

19           THE COURT DEPUTY:  As to Count 12, Using or carrying

20    a firearm in relation to the murder of and conspiracy to

21    murder Benjamin Perez a/k/a "Benjy," Steve Serrano a/k/a

22    "Steve-O," and their associates, how do you find the defendant

23    Carlos Gomez, guilty or not guilty?

24           THE FOREPERSON:  Not guilty.

25           THE COURT DEPUTY:  As to Count 13, Using or carrying

**CERTIFICATE OF SERVICE**

I swear under the penalty of perjury that I have served a true and correct copy of the foregoing:

MOTION TO VACATE CONVICTION
AND SENTENCE PURSUANT TO TITLE
28 U.S.C. § 2255

to the following:

Audrey Strauss
United States Attorney
United States Attorney's Office
Southern District of New York
1 Saint Andrew's Plaza
New York, N.Y. 10007

by placing in a postage pre-paid envelope and deposited in a U.S. mailbox this 20th day of April, 2021.

Carlos Gomez
#41128-054 pro-se
USP Tucson
P.O. Box 24550
Tucson, Arizona 85734

# PRIORITY MAIL

     

FOREVER / USA   FOREVER / USA   FOREVER / USA   FOREVER / USA   FOREVER / USA   FOREVER / USA

**UNITED STATES POSTAL SERVICE.**    *Retail*

**P**

**US POSTAGE PAID**
**$0.00**
Origin: 44333
04/20/21
3800970018-90

**PRIORITY MAIL 2-DAY®**

1 Lb 4.40 Oz
**1006**

EXPECTED DELIVERY DAY: 04/23/21

C014

SHIP
TO:
500 PEARL ST
New York NY 10007-1316

**USPS TRACKING® #**

9505 5160 1882 1110 7156 19

EP14F July 2013
OD: 12.5 x 9.5

P S 00001000014

FROM: Carlos Gomez #41128-054
USP Tucson
P.O. Box 24550
Tucson, Arizona 85734

TO:
Clerk of the Court - pro-se office
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007



RECEIVED
SDNY PRO SE OFFICE
2021 APR 26  AM 10: 28

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE


**UNITED STATES POSTAL SERVICE**

This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

